UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20280-CIV-MORENO/LOUIS

CYNTHIA STERN,

    Plaintiff,

vs.

NCL BAHAMAS LTD., a Bermuda
Corporation d/b/a NORWEGIAN CRUISELINES,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (ECF No. 43). This case has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, for a ruling on all pre-trial, non-dispositive matters (ECF No. 51). The Court held a hearing on the Motion for Summary Judgment on August 4, 2020.[1] Upon consideration of the Motion, response, argument by counsel and being otherwise apprised, I respectfully recommend that Defendant's Motion be **DENIED**.

    **I.  BACKGROUND**

      **a. Factual Background**

This is a maritime personal injury action by Plaintiff Cynthia Stern against Defendant NCL Bahamas Ltd. ("NCL"), seeking damages for injuries Plaintiff sustained when she fell while aboard Defendant's cruise ship, the *N. Getaway*.

---

[1] The Court also heard argument on the Parties' motions *in limine*, which will be disposed of separate orders.

1

On January 7, 2018, at approximately 1:11 PM, Plaintiff boarded the *N. Getaway*, a cruise ship departing from Miami, Florida (ECF No. 59-11). Prior to Plaintiff gaining access to her stateroom, the cabin was cleaned by room steward Jhonas Quito Flores (ECF No. 59-3 at 25:7-14). Mr. Flores first cleaned the stateroom and then sanitized the bathroom floor with a chemical substance, rinsed and dried the floor (*id*. at 34:16-25). After sanitizing the bathroom, Mr. Flores exited the cabin. Sometime after, a second steward, Pamela Sunga, conducted spot checks of some staterooms to ensure they were in proper condition before allowing passengers to enter their assigned rooms. Ms. Sunga did not identify any deficiencies in Plaintiff's stateroom and no other person entered the stateroom after her inspection. At 1:30 PM, Executive Housekeeper Jose Omier Wilson indicated that all staterooms were open (ECF No. 59-1).

Plaintiff entered her cabin for the first time thirty to forty-five minutes after boarding the ship. Between 1:41 PM and 1:56 PM, Plaintiff entered the bathroom, stepping over a threshold at the entry of the bathroom, slipping on her right foot and falling forward. Plaintiff sustained serious injuries to both of her arms and hit her head on the bathroom sink. Plaintiff did not see a substance when she slipped, however, immediately after her fall, she felt with her hands a slippery and slimy substance on the floor. Plaintiff does not know the source of the slippery substance. As a result of her fall, Plaintiff hit her heard on the sink, broke both arms and sustained injuries to her shoulder.

After her fall, Plaintiff called out for help and within a few minutes, Ms. Sunga responded to the stateroom. Plaintiff informed Ms. Sunga that she had fallen and indicated that she hit her head and hurt her arms. Ms. Sunga did not see any visible substance or blood on the bathroom floor. Ms. Sunga called Mr. Flores into the stateroom to sanitize the bathroom. Mr. Flores testified

that he saw blood on the floor.[2]

At approximately 3:10 PM, Plaintiff was taken to the ship's medical center, where she was examined by Catalina Ruiz, RN and Rodineil Abengania Nomorosa, M.D. Nurse Ruiz noted that she received a 911 call reporting that "a guest has fallen on the cabin bathroom and is unable to stand up. Guest states she miscalculate the step going in to the bathroom trip and fall." (ECF No. 43-1). Plaintiff denied treatment on the ship and asked to be debarked. The case summary also reflects two physician orders by Dr. Nomorosa: the first entered at 4: 48 PM indicates that "Patient slipped and fell on her cabin noting pain on both elbows and shoulder." (ECF No. 59-5). The second order entered at 4:57 PM states "Patient allegedly tripped and fell [in] her stateroom complaining of both upper extremity pain." (*id*.). The later entry was cancelled as duplicative (*id*.).

Plaintiff was taken to Jackson Memorial Hospital, where she was treated by Christopher N. Sweat, M.D., who indicated in his notes that "Ms. Stern is a pleasant 66 year old woman who presents after a mechanical fall. She had just gotten onto a cruise, and unfortunately tripped on the lip of the hatch while walking to the bathroom, falling onto outstretched arms and striking her forehead against the sink." (ECF No. 43-3). While at Jackson Memorial Hospital, Plaintiff was also examined by Matthew J. LaVelle, M.D., who indicated in his notes that "[t]he patient states that she just boarded the cruise ship and was in her cabin when she attempted to step into the bathroom and tripped over the steps…[s]he fell on both of her arms and struck her head." (ECF No. 43-4).[3] Plaintiff was discharged from Jackson Memorial Hospital on the date of the accident.

The next day, Plaintiff was treated at West Boca Medical Center, where she was examined

---

[2] Plaintiff does not dispute that Ms. Sunga testified she did not see any substance on the bathroom floor, however, contends that Ms. Sunga must have seen something on the floor, which promoted her to summon Mr. Flores to sanitize the bathroom (ECF No. 59 ¶ 15).
[3] Plaintiff challenges the admissibility of her statements to medical providers as well as the records containing those statements in a motion *in limine*. As explained in a separate order, Plaitniff's statements and medical records are admissible: Plaintiff's statements are admissible as statements by a party opponent under Fed. R. Evid. 801(d); and the records themselves are admissible under Fed. R. Evid. 801(d)803(6) as business records.

by Kanwal Akhtar-Kamal, M.D. Dr. Akhtar-Kamal indicated that Plaintiff reported that she fell because she could not avoid an uneven entrance. Dr. Akhtar-Kamal also noted that Plaintiff's arms were in severe pain and that she could not move and, accordingly, Dr. Akhtar-Kamal admitted Plaintiff into the medical center and requested an orthopedic consultation. Plaintiff had surgery on both arms while at West Boca Medical Center. After surgery, Plaintiff was transferred to a rehabilitation center at Healthsouth at Holy Cross, and a health record from the center indicates that "Ms. Stern's boat was still in the Port of Miami when she went to the bathroom and unfortunately slipped and fell in the entrance to the bathroom." (ECF No. 59-12). Since then, Plaintiff has had a reverse shoulder replacement and attended physical therapy.

NCL has a turnaround day cleaning policy that requires room stewards to first spray the bathrooms with cleaning products and let the chemicals sit. In the interim, room stewards change the bed linens and clean other parts of the room. Once they are done cleaning the room, the steward returns to the bathroom to rinse and dry the floor. After the floor is dry, the stewards restock the bathroom with lotions, soap, shop containers, and toilet paper. The stewards double check the staterooms before declaring the rooms are ready. No passengers are permitted into the staterooms until all rooms have been declared ready. Mr. Flores was the steward responsible for cleaning the stateroom assigned to Plaintiff. Contrary to NCL's policy, Mr. Flores sanitized the bathroom last. He changed the bed linens, threw out the trash, and then sprayed the bathroom floor, sink, and shower. He rinsed the floor, sink, and shower and then dried all three.

b. **Procedural History**

Plaintiff filed a one-count Complaint alleging a negligence claim against Defendant NCL. In the Complaint, Plaintiff alleges that NCL owed her a duty to exercise ordinary and reasonable care under the circumstances and that NCL had breached that duty of care by committing several

4

acts or omissions relating to two dangerous conditions: a slimy and slippery chemical substance on the bathroom floor and an unreasonably slippery floor.[4] Plaintiff's liability theory is that Mr. Flores sanitized the bathroom in a manner contrary to NCL's policies, leaving behind a chemical substance on the subject restroom floor, on which Plaintiff slipped. Additionally, Plaintiff argues that coefficient testing revealed that the bathroom floor was unreasonably slippery and below industry standards, and NCL breached its duty to warn Plaintiff of that dangerous condition.

## II.  STANDARD OF REVIEW

### a. Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id*. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must support his assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean,* 285 F. Supp. 3d 1349, 1351 (S.D.

---

[4] Plaintiff alleges NCL failed to: (1) maintain the cabin in a reasonably safe condition; (2) use safe flooring surfaces and materials in or around the area where Plaintiff fell; (3) conduct routine inspections of the area where Plaintiff fell; (4) establish, implement, and enforce policies and procedures regarding cleaning and maintenance of the area; (5) warn Plaintiff that the area where she fell was slippery and or dangerous; (6) correct the slippery substance; (7) failure to warn Plaintiff of the slippery nature of the floor surface when wet; (8) adequately mark the area where Plaintiff fell; (9) exercise reasonable care in managing and operating the area on the subject vessel where the accident occurred; and (10) exercise reasonable care in the maintenance of Plaintiff's cabin (ECF No. 1 ¶ 22).

Fla. 2018), *aff'd*, 774 F. App'x 508 (11th Cir. 2019) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, No. 15-CV-24230, 2017 WL 10795681, at *2 (S.D. Fla. Jan. 13, 2017). Summary judgment is proper "against a part who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

In considering a motion for summary judgment, the Court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. at 135 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co*, 475 U.S. at 586-87.

### b. Federal Maritime Law

Federal maritime law governs this dispute. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1235 (S.D. Fla. 2006) (concluding that torts arising on navigable waters are governed by federal maritime law). The Eleventh Circuit has held that general principles of negligence law apply in maritime tort cases. *Knickerbocker v. Bimini SuperFast Operations, LLC*, No. 13-24500-CIV, 2014 WL 12536981, at *4 (S.D. Fla. Nov. 21, 2014). To establish a successful negligence action, a plaintiff must show: (1) defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that the alleged breach was the actual and proximate cause of plaintiff's injuries; and (4)

that plaintiff suffered damages. *Isbell*, 462 F. Supp. 2d at 1237; *Hasenfus v. Secord*, 962 F.2d 1556, 1559-60 (11th Cir. 1992). The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence claim. *Id.*

### III.   DISCUSSION

NCL primarily argues that the documentary evidence in the record unambiguously undermines Plaintiff's allegations that Plaintiff slipped in a chemical substance left on the subject floor by an NCL steward; rather the evidence shows that Plaintiff tripped over a threshold at the entry of the subject bathroom. NCL argues, in the alternative, that if Plaintiff's accident was the result of a slip and fall in the cabin bathroom, summary judgment is warranted because Plaintiff has failed to adduce evidence of the alleged-risk creating a dangerous condition (slimy chemical substance) and even if there was a dangerous condition, there is no evidence that NCL had actual or constructive notice of such condition.

Plaintiff opposes the Motion, arguing that there is a genuine dispute as to the mechanics of her fall: whether she slipped as she alleges or whether she tripped over the threshold at the entry of the bathroom. Plaintiff refutes NCL's contention that the evidence irrefutably shows that she tripped over the threshold. Moreover, Plaintiff contends that there is evidence that NCL had notice of the dangerous condition of a slimy chemical substance on the floor because an NCL steward cleaned the subject floor minutes before Plaintiff's fall, he did so in a manner inconsistent with NCL's cleaning policies, and the subject bathroom was in NCL's exclusive control during that time. Plaintiff also argues that she has adduced sufficient evidence to create an issue of fact regarding whether the subject floor was unreasonably slippery when wet and as such, NCL had a duty to warn Plaintiff of that dangerous condition.

7

### a. There is a Genuine Dispute Over Whether Plaintiff Tripped

NCL contends that it is entitled to summary judgment because the record evidence irrefutably demonstrates that Plaintiff tripped over a threshold outside the subject bathroom, that the threshold is an open and obvious condition, and thus, liability is precluded. In support of this argument, NCL cites to Plaintiff's medical records following her accident that memorialize statements that Plaintiff reported tripping over a threshold. For instance, NCL cites to the case summary prepared by Nurse Ruiz, the nurse who examined Plaintiff at the ship's medical center. Those notes indicate: "911 call informing that a guest has fallen on the cabin bathroom and is unable to stand up. Guest states she miscalculate the step going into the bathroom trip and fall." (ECF No. 59-5 at 1). At her deposition, Nurse Ruiz testified that the contents of her notes were based on her interview of Plaintiff.

NCL also points to "Emergency/Trauma Documentation," prepared by Dr. Sweat at JMH. In his notes, Dr. Sweat indicated that Plaintiff "tripped on the lip of a hatch while walking into the bathroom." Dr. LaVelle, the consulting orthopedic surgeon at JMH, prepared a Consultation Report in which he indicated that Plaintiff fell when "she attempted to step up into the bathroom and tripped over the steps." At his deposition, Dr. LaVelle testified that despite not having personal recollection of consulting Plaintiff, his notes are based on his personal interviews of patients. NCL also relies on Dr. Kamal's notes, which report that Plaintiff fell because "she could not avoid an uneven entrance and fell." At his deposition, Dr. Kamal testified that although he does not have a personal recollection of his interview of Plaintiff, his notes are a product of his personal interview of his patients. NCL also relies on the opinion of its biomechanics Dr. Amber Stern, who opinioned

that Plaintiff's injuries were consistent with a trip into the subject bathroom.[5]

Plaintiff denies that she tripped and denies reporting that she tripped over a threshold to any medical service provider. Plaintiff relies on her deposition testimony that she fell within minutes after the staterooms opened and that she felt a slippery and slimy substance on the floor after she fell (ECF No. 54-1, 42, 62-63). Plaintiff also relies on medical records from Holy Cross Hospital dated January 29, 2018, which indicate that Plaintiff reported slipping in the cabin bathroom (ECF No. 59-12). Plaintiff avers that those records contradict the medical records cited by Defendant and more importantly, creating a genuine issue of material fact as to Plaintiff's fall. Plaintiff also points out that Nurse Ruiz' case summary notes are inconsistent with another case summary entry titled "physicians order," entered by Dr. Nomorosa on the date of Plaintiff's accident, which indicates that Plaintiff reported slipping and falling in her cabin, causing injury to both elbows and shoulder (ECF. No. 59-5). Lastly, Plaintiff challenges NCL's reliance on Dr. LaVelle and Kamala's notes as not competent because both testified that they did not have a personal recollection of interviewing Plaintiff.

At summary judgment, NCL has the burden of proving the absence of a genuine issue of material fact and all factual inferences must be draw in Plaintiff's favor. I recommend that NCL's motion be denied on this ground. This scenario presents a textbook genuine dispute of material fact, in which NCL asserts that the record evidence overwhelmingly supports its position while Plaintiff argues and presents some evidence that rivals NCL's argument. *See S. Fresh, LLC v. Breschro & Co., Inc.*, No. 15-21788-CIV, 2016 WL 7546514, at *1 (S.D. Fla. Mar. 1, 2016) (denying motion for summary judgment because the parties presented evidence of rival "he said/he

---

[5] Plaintiff moved *in limine* to exclude Dr. Stern's opinion. Dr. Stern's opinion is not material to the analysis herein or recommendation that Defendant's Motion be denied, and Plaintiff's Motion to Strike (ECF No. 48) is disposed of by separate order.

9

said versions of what took place."). Plaintiff has adduced evidence that supports her position; namely her own testimony and two medical records that contradict NCL's position that the record evidence irrefutably refutes the allegations in the Complaint. At this procedural posture, the Court is prohibited from weighing the evidence adduced by both parties and is required to limit its inquiry to whether Plaintiff has adduced competent evidence sufficient to raise a genuine issue of material fact. *See Ali v. Dist. Dir.*, 209 F. Supp. 3d 1268, 1276 (S.D. Fla. 2016) (denying motion for summary judgment where movant did not adduce sufficient evidence to show that the trier of fact could not reasonably find for Petitioner based on the above-described evidence and the non-movant presented his own testimony, a document, and circumstantial evidence in support of his position). Moreover, the Court also notes that NCL did not cite one case supporting its argument that summary judgment is proper where Plaintiff's account of the injury-causing incident is contradicted by evidence of her prior statements made in connection with receipt of medical care. For these reasons, I recommend that NCL's motion be denied on this ground.[6]

b. **Whether A Dangerous Condition Existed**

To prevail on a maritime tort claim, a plaintiff must show: (1) the defendant had a duty to protect against a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the injury; and (4) the plaintiff suffered actual harm. *See Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x. 949, 951–52, (11th Cir. 2016). A shipowner has a duty of reasonable care under the circumstances. *See id.*

NCL contends that there is no evidence to support the allegation that there was a wet and

---

[6] NCL further argues that summary judgment should be granted because the bathroom threshold is an open and obvious condition and thus, NCL did not owe Plaintiff a duty to warn. This argument is premised on NCL's contention that the evidence irrefutably shows that Plaintiff tripped over a bathroom threshold; because NCL has not met its burden in disproving Plaintiff's version of events, this argument cannot stand, and the Motion should not be granted on this basis.

slippery substance on the subject restroom floor. NCL argues that because Plaintiff testified that she cannot identify the substance on which she slipped, how the substance got there, how long it had been there, and did not actually see the substance on the floor, there is no evidence of the existence of an unreasonable dangerous condition. NCL argues that Plaintiff's self-serving testimony combined with Flores' testimony that he cleaned and dried the floor, and Sunga's testimony that she conducted spot checks on cabins, precludes a finding that the dangerous condition existed.

It is true that a shipowner does not serve as an insurer to its passengers and that the mere fact that an accident occurs does not give rise to a presumption of a dangerous condition. *See Villa v. Carnival Corp.*, 207 F. Supp. 3d 1311, 1314 (S.D. Fla. 2016). However, the fact that Plaintiff cannot identify the substance she slipped on or how it got there does not mean that there was no dangerous condition. *Id*. Contrary to NCL's position that Plaintiff exclusively relies on her self-serving testimony, Plaintiff has adduced the following evidence to show the existence of a slimy and slippery substance: Plaintiff testified that she slipped on a slippery substance and that while she was trying to get up from the bathroom floor, she felt a slimy and slippery substance on one of her hands. Plaintiff has adduced evidence that approximately 26 minutes before she entered her assigned cabin, the room steward had applied a cleaning chemical to the subject bathroom floor. His application of the chemicals so close to the time of turning the cabin over runs contrary to NCL's cleaning policy. Once the room steward was done cleaning the subject cabin, the cabin remained in NCL's exclusive control until minutes later, when Plaintiff entered the cabin and suffered her fall.

Plaintiff also advances the opinion of her expert Mr. Reza Vaghar, who conducted coefficient friction testing on the subject bathroom floor. Mr. Vaghar opines that when wet, the

floor surface was below the minimum industry safety standards, which Plaintiff contends means the subject floor was unreasonable slippery when wet.[7]

Because Plaintiff has adduced evidence sufficient for a jury to conclude that a dangerous condition existed, this case is distinguishable from those cited in support by Defendant. *E.g.*, *Gordon v. Target Corp.*, No. 07-80412-CIV, 2008 WL 2557509, at *5 (S.D. Fla. Jun. 23, 2008) (granting summary judgment where plaintiff had "no idea" what caused her fall and adduced no evidence to support her allegation that the floor was unreasonably slick); *Oliver v. Columbia Sussex Corp.*, 391 F. App'x 840 (11th Cir. 2010) (affirming entry of summary judgment on a record that contained no evidence of what caused plaintiff's fall and rejecting plaintiff's speculation as to cause). This case is analogous to *Villa*, wherein the court found that plaintiff had adduced evidence supporting the existence of a dangerous condition, including his own testimony that he slipped on a wet floor and half his body was wet as a result of the fall; additionally, the cruise line's employees testified that they clean the bathrooms with sanitizer and water, and that the employees are required to wear slip-resistant shoes. *Villa*, 207 F. Supp. 3d at 1314; *see also Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1193 (S.D. Fla. 2016) (denying motion for summary judgment despite testimony of NCL employee that he had not seen a puddle in the subject area in the 15 minutes preceding the fall, and finding that a dangerous condition existed where plaintiff testified that while he did not see a puddle before he fell, he testified that the substance had gotten onto his clothes and legs during the fall); *Haiser v. MSC Cruises (USA) Inc.*, No. 18-CV-60964-RS, 2019 WL 4693200, at *4 (S.D. Fla. Aug. 9, 2019) (denying motion for

---

[7] NCL moved *in limine* to exclude Mr. Vaghar's opinion primarily on relevance grounds, an argument predicated on its contention that the evidence supports only one version of events: one in which Plaintiff tripped, not slipped. While NCL argues that Mr. Vaghar's opinion is not pertinent, NCL too has noticed an expert to testify about the coefficient of friction of the bathroom floor. For the reasons set forth herein, Mr. Vaghar's opinion is relevant. NCL's Motion to Strike Mr. Vaghar (ECF No. 46) is disposed of by separate order.

summary judgment and finding that plaintiff's allegations were not based on mere speculation, rather she introduced evidence that another passenger witnessed a puddle in the area where the plaintiff slipped 15 minutes before plaintiff's fall and based on that evidence a jury could reasonably find that a dangerous condition existed).

Plaintiff's evidence that a dangerous condition existed is sufficient to create a material dispute of fact. Accordingly, I recommend that the Court deny the motion on this ground.

### c. Actual or Constructive Notice of Slimy and Slippery Substance

NCL argues that even if the slimy and slippery substance existed, Plaintiff has not adduced evidence of its actual or constructive notice of the dangerous condition. NCL contends that Plaintiff has not shown its actual notice because Mr. Flores testified he rinsed and dried the subject bathroom and that Plaintiff has adduced no evidence that NCL's cleaning policies were not followed; and that Plaintiff has not shown its constructive notice because she has not shown the dangerous condition existed for a sufficient period of time or prior similar incidents.

In response, Plaintiff argues that the record evidence demonstrates that NCL had constructive notice because the dangerous condition was present for at least 11 to 26 minutes after Mr. Flores applied the cleaning chemical on the subject floor and it is undisputed that the bathroom was in NCL's exclusive control between the time that the bathroom was sanitized and the first time Plaintiff entered the cabin. Plaintiff also avers that the existence of a cleaning policy addressing a given concern implies constructive notice of the dangerous condition.[8] In support of her argument, Plaintiff cites to Mr. Flores' testimony that he sanitized the floor with a cleaning solution and that cleaning the bathroom was the last thing he did before exiting the cabin. Plaintiff

---

[8] Plaintiff also argues that she has shown constructive notice through evidence of substantially similar prior incidents, which are the subject of NCL's motion *in limine*. The above analysis and recommendation to deny Defendant's Motion for Summary Judgment was not dependent on Plaintiff's proposed evidence of prior incidents, which will be disposed of by separate order.

13

also adduced evidence that after Mr. Flores cleaned the cabin it remained in NCL's exclusive control until Plaintiff entered the room. Plaintiff avers that taking the evidence in the light most favorable to her and making all inferences in her favor, a reasonable jury could find that NCL had constructive notice of the dangerous condition.

"To show notice, it is not enough to demonstrate merely that defendant negligently created or maintained its premises." *Higgs v. Costa Crociere S.P.A. Co.*, No. 19-10371, 2020 WL 4723739, at *4 (11th Cir. Aug. 14, 2020). "Rather, the plaintiff must establish that a cruise line in fact knew or should have known that a particular hazard existed." *Id*.

The recent decision *Higgs* compels the recommendation here that Plaintiff's evidence is sufficient to establish the element of notice. There, the Eleventh Circuit affirmed the district court's denial of a judgment as a matter of law, finding that the plaintiff had adduced sufficient evidence of defendant cruise line's actual or constructive notice. *Higgs*, 2020 WL 4723739, at *4. Plaintiff had adduced sufficient evidence for a jury to reasonably infer that the cruise line had actual notice of a bucket containing dirty water behind a blind corner in a highly-trafficked breakfast pathway through the testimony of plaintiff's daughter and grandson who witnessed defendant's employees placing buckets in different areas of the pathway, some of which placed caution signs around the buckets. *Id*. at *4-5.

Here too, I am satisfied that Plaintiff has introduced sufficient evidence from which a jury could reasonable infer that NCL, through its employees, had actual knowledge of the dangerous condition. The evidence shows that Mr. Flores applied a cleaning chemical on the subject floor approximately 11 to 26 minutes before Plaintiff's fall and that the area on which Plaintiff slipped remained in NCL's exclusive control until Plaintiff entered the cabin. A jury may also reasonably conclude from NCL's cleaning policy, not followed on this occasion, of requiring application of

14

the chemicals at the beginning of the room turn around process, that NCL knew or should have known that the floor is unreasonably slippery when the chemicals remain on it. Though NCL also advances evidence that Mr. Flores testified that he rinsed and dried the chemical solution, at this posture, where his testimony conflicts with Plaintiff's on the question of whether the floor remained wet when she entered, the Court must not resolve the dispute in movant's favor but rather look at the evidence in the light most favorable to Plaintiff. Plaintiff has also adduced the expert opinion of Mr. Vaghar, who opined that the slip index of the subject bathroom floor was below industry standard when wet, which Plaintiff contends supports her theory that the slimy substance on an unreasonably slippery floor caused her to fall and sustain serious injuries.

Although NCL argues that Plaintiff cannot prove constructive notice because she did not advance evidence of substantially similar prior incidents, "evidence of substantially similar accidents is but one of the ways a plaintiff may prove a defendant's constructive notice of a defective condition." *Thomas*, 203 F. Supp. 3d at 1192-93. "In premises liability cases, for example, a plaintiff may prove constructive notice if he shows that a dangerous condition existed on the floor for a sufficient length of time, which Florida courts have found to be 15-20 minutes." *Id.*; *see also Wieters v. Carnival Corp.*, No. 16-25284-Civ, 2018 WL 4682217, at *3 (S.D. Fla. Sept. 28, 2018) (recognizing that constructive notice can be established by showing "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures."); *see also Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1276 (S.D. Fla. 2019) (denying motion for summary judgment and finding that Plaintiff had adduced evidence of constructive notice because plaintiff testified that she did not feel wetness on the floor before falling, for 30 minutes plaintiff and her sister did not witness anyone spill a drink, or crewmembers mopping the area where plaintiff claimed she slipped).

The cases cited by NCL are factually distinguishable because the record in those cases were devoid of evidence of constructive notice. For instance, in *Isbell*, the court found that plaintiff had not shown constructive notice because plaintiff argued that the defendant should have known that passengers could get bitten by snakes on a river excursion simply because the plaintiff was bitten by a snake during an excursion. 462 F. Supp. at 1237. Similarly in *Francis v. MSC Cruises, S.A.*, No. 18-61463-CIV-BSS, 2019 WL 4247290, at *1 (S.D. Fla. Sept. 5, 2019), plaintiff's theory of constructive notice, the court found, was predicated entirely on the common sense principle "that general risks are generally foreseeable" and her failure to adduce any evidence of defendant's constructive notice of the *specific* dangerous condition that caused her fall warranted entry of summary judgment.

Finally, this case is distinguishable from *Prather v. NCL (Bahamas) Ltd.*, No. 19-21832-CIV, 2020 WL 4381412, at *1 (S.D. Fla. July 31, 2020), cited by NCL after the hearing as supplemental authority. The plaintiff in *Prather* adduced no evidence to show when the transitory liquid in which she allegedly fell presented itself; her speculation that it came from an overflowing toilet was insufficient to support her contention that it was caused by a leaky toilet, about which defendant should have notice, or that the liquid had been on the floor for a length of time sufficient to warrant a finding of constructive notice. *Id.* at *6. By contrast, Plaintiff has here advanced evidence that NCL's employee applied chemicals to the floor on which she slipped, shortly before she slipped, on a floor her expert has opinioned is unreasonably slippery when wet; and in contravention of a cleaning policy that distances the time between application of the chemicals to the floor and anticipated entry into the room of its passengers. For all these reasons, Plaintiff's evidence of constructive notice is sufficient to reach a jury and I recommend that NCL's Motion be denied.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 43) be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 1st day of September, 2020

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE